# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER SILVESTRINI** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2704** |
| **INTUITIVE SURGICAL, INC., ET AL.** | **SECTION "I"** |

## ORDER AND REASONS

Before the Court is a motion[1] to remand filed by plaintiff, Jennifer Silvestrini ("Silvestrini"), and a motion[2] to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant, University Healthcare System, L.C., d/b/a Tulane University Hospital and Clinic ("TUHC"). Defendant, Intuitive Surgical, Inc. ("Intuitive"), opposes[3] Silvestrini's motion to remand. Silvestrini opposes[4] TUHC's motion to dismiss. For the following reasons, Silvestrini's motion to remand is **DENIED** and TUHC's motion to dismiss is **GRANTED**.

### *BACKGROUND*

This case arises out of the alleged improper care that Silvestrini received in October 2010 while undergoing thyroid surgery at TUHC.[5] Prior to her admission as a patient at TUHC, Silvestrini chose to have a robotic transaxillary total throidectomy because she had been informed that the robot-aided procedure was far less invasive than traditional surgery.[6] However, during the surgery, the robot malfunctioned and neither Dr. Emad Kandil ("Dr.

---

[1] R. Doc. Nos. 6 and 17.
[2] R. Doc. Nos. 7 and 18.
[3] R. Doc. Nos. 11 and 19.
[4] R. Doc. No. 10.
[5] R. Doc. No. 1-2, ¶ IV.
[6] R. Doc. No. 1-2, ¶ V.

Kandil") who was performing the procedure, nor any other TUHC staff member at the hospital, was able to repair it.[7] Because Silvestrini was under general anesthesia with the robot "inserted" in her neck when the malfunction occurred, Silvestrini's family agreed to proceed with the surgery. They gave consent for her thyroid to be removed using the traditional, non-robot-aided procedure.[8] This technique required opening Silvestrini's neck with a long surgical cut.[9]

Silvestrini alleges that, as a result of having the traditional procedure, she has an "extensive, unattractive scar" on her neck that will require significant plastic surgery to repair.[10] She further claims that Dr. Kandil was not able to remove all of her thyroid and that "remnants" of such tissue remain. Silvestrini has been advised that she may require one or more surgeries to remove this tissue.[11]

Consequently, Silvestrini filed her petition for damages (no. 11-10260) against Intuitive and TUHC in Civil District Court for the Parish of Orleans, State of Louisiana, on September 26, 2011.[12] Silvestrini alleges that Intuitive manufactured, assembled, distributed, serviced and/or maintained the surgical robot. According to Silvestrini, Intuitive was responsible for training TUHC staff members to use the surgical robot and that such training was "totally lacking or woefully inept or inadequate." She further asserts that Intuitive, by either agreement or contract, was to provide service personnel who could quickly "troubleshoot" any problems with the robot by telephone.[13] As for TUHC, Silvestrini alleges that the hospital failed to: (1) maintain the robot, (2) have properly trained personnel on staff who could resolve the malfunction that

---

[7] R. Doc. No. 1-2, ¶ VI.
[8] R. Doc. No. 1-2, ¶ X.
[9] R. Doc. No. 1-2, ¶ X.
[10] R. Doc. No. 1-2, ¶ V.
[11] R. Doc. No. 1-2, ¶ XIII.
[12] R. Doc. No. 1-2.
[13] R. Doc. No. 1-2, ¶ XII.

occurred during her surgery, and (3) have an agreement with Intuitive that would require the availability of an Intuitive technician to respond to such an emergency in person.[14] As a result of defendants' actions, Silvestrini claims she has suffered physical pain and mental anguish.

Silvestrini did not name Dr. Kandil as a defendant because, pursuant to the Louisiana Medical Malpractice Act ("LMMA," La. Rev. Stat. § 40:1299.41, *et seq.*), she is required to present her claims against him to a medical review panel before she can file an action in court.[15] La. Rev. Stat. § 40:1299.47(B)(1)(a)(i) ("No action against a health care provider . . . may be commenced in any court before the claimant's proposed complaint has been present to a medical review panel."). In accordance with the LMMA, Silvestrini filed a request for a medical review panel ("PCF complaint") regarding the care she received from Dr. Kandil with the Louisiana Commissioner of Administration.[16]

Silvestrini also set forth TUHC's alleged breaches of the standard of care in her PCF complaint. She asserts that her injuries and damages were caused by TUHC's various acts and omissions including, but not limited to:

(1) Lack of informed consent;

(2) Misrepresentation as to the possible failure/malfunction/breakdown of the robotic equipment;

(3) Beginning and performing the robotic surgery without present or available hospital or equipment technicians/representatives capable of determining the cause of the malfunction/breakdown and correcting same;

(4) A lack of or deviation from guidelines, protocols, [and/or] rule[s] [sic] which should/would have required appropriate technical assistance present

---

[14] R. Doc. No. 1-2, ¶ XII.
[15] R. Doc. No. 1-2, ¶ IV.
[16] R. Doc. Nos. 1-2, ¶ IV, and 11-1, pp. 6-10. Silvestrini filed her original request for a medical review panel in a letter dated February 17, 2011. She supplemented her original request in a second letter dated August 31, 2011. The Court refers to these two letters together as her PCF complaint.

> and/or immediately available before and during the reference[d] [sic] procedure;
>
> (5) Lack of and/or inadequate training by [TUHC] of Dr. Kandil and other [TUHC] employees/staff [with respect to] the [robot] so as to enable Dr. Kandil or others to promptly determine and correct the problem/malfunction/breakdown . . . .[17]

Intuitive received service of process through its registered agent on October 3, 2011, and timely filed its notice of removal pursuant to 28 U.S.C. § 1446 on October 28, 2011.[18] Intuitive alleges that this Court has original jurisdiction over this matter because the amount in controversy, exclusive of costs and interest, exceeds $75,000.00 and that there is complete diversity of citizenship between itself and Silvestrini.[19] *See* 28 U.S.C. § 1332(a). According to Intuitive, at the time this case was commenced in state court, Silvestrini was, and remains, a citizen of the State of Louisiana and that it was, and remains, a corporation organized under the laws of Delaware with its principal place of business in California.[20]

Intuitive argues that TUHC, a citizen of the State of Louisiana, was improperly joined as a defendant because Silvestrini must first present her claims against TUHC in a request for a medical review panel, just as she did with Dr. Kandil.[21] As this review has not been completed, Intuitive asserts that Silvestrini may not pursue any lawsuit against TUHC at this time.[22] Consequently, Intuitive contends that TUHC's improper joinder in this matter does not prevent

---

[17] R. Doc. No. 11-1, p. 7.
[18] R. Doc. No. 1, p. 2.
[19] R. Doc. No. 1, p. 2.
[20] R. Doc. No. 1, p. 2.
[21] R. Doc. No. 1, pp. 3-6.
[22] R. Doc. No. 1, pp. 3-6.

this Court from exercising diversity jurisdiction. For the same reasons, TUHC argues that it must be dismissed as a party pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[23]

Silvestrini maintains that TUHC's actions do not constitute "malpractice" as that term is defined in the LMMA and that, as such, she does not have to present her claims to a medical review panel before she may file a lawsuit against TUHC. Accordingly, Silvestrini asserts that TUHC is a proper party to this action and that, because TUHC is a Louisiana citizen, this Court lacks diversity jurisdiction[24] and must remand this matter to state court.[25]

*LAW AND ANALYSIS*

**I. Improper Joinder**

Intuitive argues that its removal of this matter to federal court was proper because this Court has subject-matter jurisdiction based on diversity grounds. *See* 28 U.S.C. § 1332(a). Generally, a defendant may remove a civil action filed in state court if the federal court to which it is removed could have exercised original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing defendant bears the burden of demonstrating that the federal court has jurisdiction. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

Federal courts have original jurisdiction over actions where the amount in controversy, exclusive of costs and interest, exceeds $75,000.00 and complete diversity of citizenship exists between all plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). While a federal court must remand a civil action to state court if it lacks subject-matter jurisdiction at any time before final judgment is entered, 28 U.S.C. § 1447(c), for the purpose of determining whether the parties are

---
[23] R. Doc. No. 7.
[24] No party asserts that this Court has federal question jurisdiction. *See* 28 U.S.C. § 1331.
[25] R. Doc. No. 6.

completely diverse, a court must examine the parties' citizenship at the time the lawsuit is commenced. *Harris v. Black Clawson Co.*, 961 F.2d 547, 549 (5th Cir. 1992) ("Whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time suit was filed.") (citation omitted); *Seafoam, Inc. v. Barrier Sys., Inc.*, 830 F.2d 62, 67 (5th Cir. 1987) ("It is well established law that the jurisdiction of a federal court sitting in diversity is determined as of the time of filing of the complaint.").

When a non-diverse party is joined as a defendant, a federal court lacks subject-matter jurisdiction and the case may not be removed from state court. However, a defendant may remove the case if it can show that the non-diverse party was improperly joined.[26] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). A removing defendant may establish that a non-diverse defendant was improperly joined by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant. *Id.* (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). As Intuitive has not alleged actual fraud in Silvestrini's pleading of jurisdictional facts, the Court will consider only the second test for improper joinder.

Because the doctrine of improper joinder is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one. *Id.* In order to show that a plaintiff is unable to establish a cause of action against the non-diverse defendant, a defendant claiming improper joinder must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable

---

[26] Silvestrini's motion argues that TUHC was not "fraudulently" joined. R. Doc. No. 6. The Court notes that the U.S. Court of Appeals for the Fifth Circuit now refers to this doctrine as "improper joinder," not "fraudulent joinder." *See Smallwood*, 385 F.3d at 571.

basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *C.S. Gaidry, Inc. v. Union Oil Co. of Cal.*, 2009 WL 2765814, at *2 (E.D. La. Aug. 27, 2009) (Vance, J.) (quoting *Smallwood*, 385 F.3d at 573).

The Court may use two different methods to assess the viability of a plaintiff's claim against the non-diverse party. *Id.* First, the Court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (quoting *Smallwood*, 385 F.3d at 573). Such analysis will typically be determinative. *Id.* Nevertheless, if it is apparent that the plaintiff has "misstated or omitted" determinative facts that would establish whether joinder was proper or improper, "the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (quoting *Smallwood*, 385 F.3d at 573). In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)). Additionally, the Court must resolve all ambiguities of state law in favor of the non-removing party. *Id.*

## II. Rule 12(b)(6)

TUHC also argues that the Court must dismiss it as a party because Silvestrini's claims are premature and, consequently, she has not stated a claim upon which this Court may grant her relief. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him

7

to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief. " *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.' " *Cutrer v. McMillan*, 308 Fed. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

**III. The LMMA**

As stated briefly above, the LMMA requires plaintiffs to present "malpractice" claims against qualified "health care providers" to a medical review panel before filing a lawsuit. La. Rev. Stat. § 40:1299.41, *et seq*. All other tort liability with respect to health care providers is

8

governed by general tort law. *Coleman v. Deno*, 813 So.2d 303, 315 (La. 2002). Unless the parties agree to waive the LMMA review requirement, a malpractice suit initiated before the medical review panel issues its final ruling shall be dismissed as premature. *Bennett v. Krupkin*, 814 So.2d 681, 685 (La. App. 1st Cir. 2002) ("If an action against a health care provider covered by the Act has been commenced in a court of law and the complaint was not first presented to a medical review panel, an exception of prematurity must be maintained, and the plaintiff's suit must be dismissed.").

Whether TUHC is a proper party to this action, or whether it must be dismissed, turns on whether it is a qualified "health care provider" that committed "malpractice" in rendering "health care" to Silvestrini during her thyroid surgery, *i.e.*, if TUHC's alleged failures regarding the robot used to perform Silvestrini's surgery do not amount to malpractice, but sound in some other form of tort, then the LMMA does not require Silvestrini to submit these claims to a medical review panel. If Silvestrini does not have to proceed before a medical review panel, then TUHC is a proper defendant. The presence of TUHC would then destroy the diversity of citizenship between the plaintiff and defendants, thereby preventing this Court from exercising diversity jurisdiction and mandating that the case be remanded to state court.

Similarly, U.S. district courts in Louisiana interpreting the LMMA have denied remand when a plaintiff has failed to present malpractice claims against a non-diverse defendant to a medical review panel because the courts have found that such non-diverse defendants were improperly joined. *See, e.g., Taylor v. Ochsner Clinic Found.*, 2011 WL 6140885 (E.D. La. Dec. 9, 2011) (Vance, J.); *Bush v. Thoratec Corp.*, 2011 WL 5038842 (E.D. La. Oct. 24, 2011) (Fallon, J.); *Garcia v. Covidien, Inc.*, 2011 WL 4550809 (E.D. La. Sept. 28, 2011) (Engelhardt,

J.); *Pardo v. Medtronic, Inc.*, 2010 WL 4340821 (E.D. La. Oct. 26, 2010) (Lemelle, J.); *Marcel v. Rehabcare Group, Inc.*, 2008 WL 4657258 (E.D. La. Oct. 20, 2008) (Africk, J.); *Valence v. Jefferson Parish Hosp. Serv. No. 2*, 2008 WL 1930524 (E.D. La. May 1, 2008) (Lemmon, J); *Jones v. Centocor, Inc.*, 2007 WL 4119054 (E.D. La. Nov. 15, 2007) (Beer, J); *Senia v. Pfizer, Inc.*, 2006 WL 1560747 (E.D. La. May 23, 2006) (Africk, J.); *see also Fontenot v. Johnson & Johnson*, 2010 WL 2541187 (W.D. La. Apr. 30, 2010); *Owens v. Ethicon, Inc.*, 2010 WL 3172737 (M.D. La. Aug. 11, 2010); *Ellis v. Ethicon, Inc.*, 2010 WL 1251640 (M.D. La. Feb. 19, 2010).[27] Consequently, if TUHC's alleged failures regarding the robot are malpractice within the meaning of the LMMA, and Silvestrini filed suit against TUHC without proceeding before a medical review panel, then TUHC is improperly joined. This Court would have subject-matter jurisdiction on diversity grounds and it would be required to deny Silvestrini's motion to remand.

Silvestrini argues that, with respect to TUHC, this is a case of ordinary negligence governed by Louisiana tort law. She maintains that her claims are not within the ambit of the LMMA. Intuitive and TUHC assert the opposite. Though the Court recognizes that "the coverage of the [LMMA] must be strictly construed" because it derogates the rights of tort victims, *Williamson v. Hosp. Serv. Dist. No. 1*, 888 So.2d 782, 786 (La. 2004) (citing *Sewell v.*

---

[27] The U.S. Court of Appeals for the Fifth Circuit has not addressed the issue of whether failure to comply with the LMMA's administrative requirement for a medical review panel means that a qualified health care provider is improperly joined and its citizenship may be ignored for diversity purposes. However, the Fifth Circuit has upheld the exercise of federal jurisdiction where a district court found that a non-diverse defendant was improperly joined because plaintiffs, prior to filing their lawsuit, failed to exhaust their administrative remedies pursuant to the Louisiana Administrative Code's provisions regarding violations of Louisiana insurance statutes and regulations. The Fifth Circuit held that because plaintiffs did not "exhaust[] the adequate administrative remedies provided by Louisiana law, there is no reasonable basis Plaintiffs might be able to recover in this action against the sole non-diverse defendant . . ." and consequently that the non-diverse defendant was improperly joined. *See Melder v. Allstate Corp.*, 404 F.3d 328, 331-32 (5th Cir. 2005). Likewise, the Fifth Circuit has also affirmed a district court's denial of remand where plaintiffs failed to satisfy federal statutory exhaustion requirements in the Vaccine Act prior to filing their lawsuit. The Fifth Circuit held that because plaintiffs were procedurally barred from instituting any lawsuit against the non-diverse defendants, the non-diverse defendants were improperly joined and the district court had diversity jurisdiction to hear the case. *See Holder v. Abbott Labs., Inc.*, 444 F.3d 383 (5th Cir. 2006).

*Doctors Hosp.*, 600 So.2d 577, 578 (La. 1992)), the Court agrees with defendants. TUHC's alleged failures in providing "health care" or "professional services" to Silvestrini may be classified as malpractice within the meaning of the LMMA.

The LMMA defines malpractice as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient . . . ." La. Rev. Stat. § 40:1299.41(A)(13). A "tort" is "any breach of duty or any negligent act or omission proximately causing injury or damage to another . . . ." La. Rev. Stat. § 40:1299.41(A)(22). "Heath care" is "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement . . . ." La. Rev. Stat. § 40:1299.41(A)(9). A "health care provider" is "a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, [or a] hospital . . . ." La. Rev. Stat. § 40:1299.41(A)(10).

TUHC is a qualified health care provider.[28] In *Coleman v. Deno*, 813 So.2d 303 (La. 2002), the Louisiana Supreme Court set forth six factors that courts must assess in determining whether certain conduct by a qualified health care provider constitutes malpractice as defined in the LMMA:

---

[28] Intuitive provided the Court with a copy of TUHC's LMMA certificate of enrollment in its notice of removal. *See* R. Doc. No. 1-2, p. 13. First, the Court again notes that it may pierce the pleadings when determining whether a party is improperly joined. *Smallwood*, 385 F.3d at 573. Second, the LMMA states that a "certificate of enrollment issued by the board shall be admitted in evidence." La. Rev. Stat. § 40:1299.47(B)(1)(a)(ii). A certificate of enrollment is sufficient to establish a *prima facie* case that a health care provider is qualified under the LMMA and this presumption must be rebutted by the plaintiff. *See, e.g.*, *Goins v. Texas State Optical, Inc.*, 463 So.2d 743, 745 (La. App. 4th Cir. 1985) (stating that certificates of enrollment "were prima facie evidence of their contents and it was up to [plaintiff] to rebut this evidence of defendant's qualification"). Silvestrini does not contest that TUHC is a qualified health care provider within the meaning of the LMMA.

11

> (1) whether the injury was treatment related or caused by dereliction of professional skill,
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
>
> (3) whether the pertinent act or omission involved assessment of the patient's condition,
>
> (4) whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
>
> (5) whether the injury would have occurred if the patient had not sought treatment, and
>
> (6) whether the tort alleged was intentional.

*Coleman*, 813 So.2d at 315-16 (internal quotation marks omitted).[29] Even if TUHC's alleged conduct gives rise to alternative theories of liability, if its conduct is also malpractice within the scope of the LMMA, then Silvestrini must comply with the LMMA's administrative requirements. *See Dinnat v. Texada*, 30 So.3d 1139, 1142 (La. App. 3d Cir. 2010) ("The general rule is that any conduct by a hospital of which a patient complains is within the scope of the [L]MMA if it comes within the definitions of the [L]MMA, even if there are alternative theories of liability."); *Dominick v. Rehab. Hosp. of New Orleans*, 714 So.2d 739, 740 (La. App. 4th Cir.

---

[29] Intuitive urges the Court to look no further than Silvestrini's PCF complaint. *See* R. Doc. No. 11-1, pp. 6-10. Intuitive argues that Silvestrini's complaint is a judicial admission that her claims sound in malpractice. R. Doc. No. 11, p. 4. The Court recognizes that Silvestrini has named TUHC as a defendant in her PCF complaint and that the facts set forth therein are the same facts that form the basis of the case before this Court. However, Silvestrini has not made the same type of bald assertion as did another plaintiff in a case before Judge Brady of the Middle District of Louisiana. *See Ellis v. Ethicon, Inc.*, 2010 WL 1251640, at *4 (M.D. La. Feb. 19, 2010) (Riedlinger, M.J.) (Brady, J., report and recommendations adopted March 24, 2010) ("Any argument to the contrary [that plaintiff's claims are not malpractice pursuant to the LMMA] is belied by the plaintiff's own Petition to Establish a Medical Review Panel, wherein she alleged that '*the facts in this case present a claim for medical malpractice* based on the defendant's negligence and breach of contract.' ") (emphasis added). Consequently, out of an abundance of caution, the Court will proceed with the *Coleman* analysis and evaluate Silvestrini's claims with respect to those six factors.

1998) ("When one or more alternative theories of liability is covered by the [LMMA], courts generally apply the procedure set forth in the [LMMA].").

Silvestrini offers several cases involving hospital or medical equipment failure wherein Louisiana courts have determined that the alleged negligence did not meet the definition of malpractice set forth in the LMMA. *See Blevins v. Hamilton Med. Ctr.*, 959 So.2d 440 (La. 2007) (hospital bed); *Williamson, supra*, 888 So.2d 782 (La. 2004) (wheelchair); *Wilson v. Invacare Corp.*, 920 So.2d 393 (La. App. 2d Cir. 2006) (shower stool); *Romero v. Willis-Knighton Med. Ctr.*, 870 So.2d 474 (La. App. 2d Cir. 2004) (treadmill).[30] The Court agrees with Intuitive that these cases are distinguishable because the malfunction or failure was completely unrelated to the medical care the patient was receiving, was not treatment related, and did not entail any dereliction of professional skill.[31]

Silvestrini's complained of injuries are the direct result of selecting the robot-aided surgical procedure and the repercussions suffered when that procedure could not be completed. Silvestrini specifically chose to undergo the robot-aided procedure, rather than traditional procedure, because she had been informed that it was far less invasive. The robot failed after Dr. Kandil had "inserted" it into her neck. When he realized that the robot was malfunctioning, Dr. Kandil had to determine whether to proceed with the surgery or abandon it. As Silvestrini

---

[30] Silvestrini has also cited *Guillory v. Royal, Inc.*, 971 So.2d 1234 (La. App. 3d Cir. 2007) for the proposition that a nursing home's "failure to keep [a] hospital bed in working condition" was "not governed by [the LMMA]." R. Doc. No. 6-1, p. 3. The Court's reading of the case, however, does not support Silvestrini's reliance on it as controlling authority for her position.

*Guillory* involved a failure to supervise an elderly patient who exhibited signs indicating that she was having trouble feeding herself. The woman died from choking when she was left unattended with food. The Louisiana Third Circuit Court of Appeal concluded that it "view[ed] [the] claim as one sounding in medical malpractice, requiring the testimony of experts regarding the assessment, monitoring, supervision of the decedent as well as the applicable standard of care . . . ." *Guillory*, 971 So.2d at 1237.

[31] R. Doc. No. 11, p. 9.

alleges, TUHC was responsible for training its staff[32] to use the robot and any alleged failure in this training would not only result in treatment-related injuries but would also result in injury due to dereliction of professional skill. Consequently, a jury would need expert medical testimony to explain whether Dr. Kandil breached the standard of care by proceeding with the surgery and choosing to convert it to the traditional procedure. *Coleman*, 813 So.2d at 315-16.

Furthermore, Dr. Kandil's decisions required an assessment of Silvestrini's condition. She was under anesthesia when the malfunction occurred and the robotic failure required him to decide whether that completing the thyroid removal was in Silvestrini's best interests. As such, the complained of events occurred within the physician-patient relationship and within the scope of the activities that TUHC is licensed to perform.

Likewise, Silvestrini's alleged injuries would not have occurred if she had not selected the robot-aided procedure. Converting the surgery from the robot-aided procedure to the traditional procedure is the *sine qua non* of Silvestrini's allegations. Moreover, no visitor to the hospital could be injured in this manner, unlike a visitor who used a hospital wheelchair or

---

[32] Following a status conference with the Court, the parties provided supplemental briefing with respect to whether TUHC's "failure to train" Dr. Kandil with respect to the robot's operation and maintenance fell within the ambit of the LMMA. *See* La. Rev. Stat. § 40:1299.41(A)(13) (" 'Malpractice' means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient . . . in the training or supervision of health care providers."). Silvestrini now argues that the language in her petition regarding "trained personnel" "refers to training of non-healthcare provider personnel, *i.e.*[,] personnel who maintain hospital equipment." R. Doc. No. 17, p. 2.

The Court notes that in her PCF complaint, Silvestrini alleges that she was injured by "[l]ack of and/or inadequate training by [TUHC] of Dr. Kandil and other [TUHC] employees/staff [with respect to] the [robot] so as to enable Dr. Kandil or others to promptly determine and correct the problem/malfunction/breakdown." *See supra* pp. 3-4. Silvestrini's alleged injuries are the result of Dr. Kandil's surgery. As Intuitive underscores in its supplemental brief, Silvestrini's most recent "argument is disingenuous; a maintenance employee is not going to be called into a sterile surgical suite to 'troubleshoot' " the robot that Dr. Kandil was using to perform her procedure. R. Doc. No. 19, p. 2. Dr. Kandil was ultimately responsible for making any decision to proceed with the surgery after the robot malfunctioned. TUHC supplied the robot. The hospital is responsible for establishing a protocol that hospital personnel, including doctors, must follow when such a malfunction occurs during surgery. TUHC must train its personnel with respect to how to proceed when confronted with the type of emergency which occurred during Silvestrini's surgery.

14

treadmill. Finally, Silvestrini has not in any way alleged that these purported torts were intentional. *Coleman*, 813 So.2d at 315-16.

In *Robiho v. Univ. Healthcare Sys., L.L.C.*, 2011 WL 4747446 (E.D. La. Oct. 7, 2011) (Africk, J.), this Court was recently faced with the similar question of whether to grant or deny a motion to remand a case involving the supposed improper joinder of a non-diverse defendant hospital (TUHC)[33] that failed to properly sterilize endoscopes. The diverse defendant, GE Healthcare, argued that TUHC's alleged mistakes were malpractice pursuant to the LMMA. Because the plaintiffs had not presented their claims against TUHC to a medical review panel prior to filing their lawsuit, GE Healthcare argued that the Court could ignore TUHC's citizenship for the purpose of exercising diversity jurisdiction over the case. This Court disagreed because a review of Louisiana law did not find it to be so clear that the mere failure to set a sterilizing machine to a certain temperature would constitute malpractice under the LMMA. Because the Court had to resolve all ambiguities of state law in favor of the plaintiffs as the non-removing parties, *C.S. Gaidry, Inc.*, 2009 WL 2765814, at *2, and because LMMA coverage must be strictly construed, *Williamson*, 888 So.2d at 786, this Court remanded *Robiho* to the Civil District Court for the Parish of Orleans.[34] The Court finds the crux of Silvestrini's grievances to be distinguishable from *Robiho*. TUHC's alleged failure to provide health care or professional services to Silvestrini constitutes malpractice within the meaning of the LMMA. Silvestrini must present her claims against TUHC to a medical review panel before she can pursue any lawsuit against TUHC.

---

[33] The same non-diverse defendant in this case.
[34] The Court recognizes that another section of this court respectfully disagreed with the *Robiho* decision. *See Taylor v. Ochsner Clinic Found.*, 2011 WL 6140885 (E.D. La. Dec. 9, 2011) (Vance, J.).

## IV. TUHC's Motion to Dismiss

Finally, Silvestrini suggests that "it is problematic" whether TUHC has " 'standing' to participate in the Removal/Remand process once the matter is removed on [the] basis of diversity jurisdiction on the grounds of [improper] joinder."[35]  Silvestrini appears to be challenging TUHC's right to be dismissed by way of a Rule 12(b)(6) motion because TUHC "has no real interest in the proceedings in federal court[] [and] it lacks standing to participate in these proceedings and to invoke rules of the court."[36]  Silvestrini cites *Jewell v. Dudley L. Moore Ins., Inc.*, 872 F. Supp. 1517 (M.D. La. 1995) in support of this assertion.

In *Jewell*, the diverse defendants removed the case from state court on diversity grounds and argued that the non-diverse defendant had been fraudulently (now improperly) joined.  In reviewing a U.S. Magistrate Judge's decision to permit or deny certain discovery before the district court ruled on the plaintiff's motion to remand, the district court concluded that the magistrate did not have jurisdiction to enter any order with respect to the alleged non-diverse defendant because the district court might later determine that it was a "non-party."  *Id.* at 1520-21.

Unlike in *Jewell*, this Court has already determined that TUHC, the non-diverse defendant, was improperly joined.  Resolving the improper joinder question requires the Court to find that Silvestrini has no basis for recovery against TUHC.  *C.S. Gaidry, Inc.*, 2009 WL 2765814, at *2.  When faced with the issue of whether a non-diverse defendant was improperly joined due to failure to comply with the LMMA medical review panel requirement, other district courts in Louisiana have granted a non-diverse defendant's Rule 12(b)(6) motion after finding

---

[35] R. Doc. No. 10, p. 2.
[36] R. Doc. No. 10, p. 2.

that such defendant was improperly joined. *See Taylor v. Ochsner Clinic Found.*, 2011 WL 6140885 (E.D. La. Dec. 9, 2011) (Vance, J.); *Bush v. Thoratec Corp.*, 2011 WL 5038842 (E.D. La. Oct. 24, 2011) (Fallon, J.); *Owens v. Ethicon, Inc.*, 2010 WL 3172737 (M.D. La. Aug. 11, 2010).

Accordingly,

**IT IS ORDERED** that Silvestrini's motion to remand[37] is **DENIED**.

**IT IS FURTHER ORDERED** that TUHC's motion to dismiss[38] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**. Silvestrini's claims against TUHC are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, February __6th__, 2012.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[37] R. Doc. No. 6.
[38] R. Doc. No. 7.